(No. 13126.—Decree affirmed.)

CHARLES JOHNSTON, Appellant, *vs.* CORA MAY GASTMAN
*et al.* Appellees.

*Opinion filed February 18, 1920.*

1. WILLS—*will must be considered as a whole to determine testator's intention.* The object in construing a will is to give effect to the testator's intention, and in determining the intention every part of the will must be considered in connection with every other part, and punctuation or paragraphing will ordinarily not be permitted to control the meaning of the instrument.

2. SAME—*when the will will be given effect as testator intended, notwithstanding misdescription.* Where a will contains a residuary clause showing that the testator intended to devise all his own land, clauses in the will devising land which the testator did not own and omitting land which he did own, because of misdescription in writing the *west* half instead of the *north* half of a lot and writing the wrong section number, will be construed to devise the land of the testator which he intended to devise. (*Stevenson* v. *Stevenson,* 285 Ill. 486, distinguished.)

3. SAME—*life tenants cannot effect parol partition to terminate trusts where there are contingent interests.* Where a testator has divided his land among his three children, each in trust for the other, and provides that the share of each devisee at his or her death shall vest in the heirs of the body of the devisee, the three children cannot, by taking possession of their respective lands, effect a parol partition and terminate the trusts.

APPEAL from the Circuit Court of McLean county; the Hon. SAIN WELTY, Judge, presiding.

FRANK O. HANSON, (WILLIAM R. BACH, of counsel,) for appellant.

W. B. LEACH, and BARRY & MORRISSEY, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Charles Johnston has brought this case to this court by appeal, to review a decree of the circuit court of McLean county dismissing a bill in chancery filed by appellant and

granting relief on a cross-bill filed by defendants to the bill of appellant.

Appellant, Charles Johnston, and his sisters, Mary Sylvia Phelps and Cora May Gastman, were the only children and heirs-at-law surviving James Johnston, who died testate in McLean county in March, 1905. A widow, who survived the testator, has since died. At the time of his death James Johnston owned several hundred acres of land, besides some city lots and personal property not involved in this litigation. The first paragraph of his will directs payment of the testator's debts. By the second paragraph he devises to his son, Charles Johnston, as trustee, for the uses and purposes therein mentioned, certain land therein described by government descriptions, to be held in possession by the trustee, and the income, after payment of repairs, taxes, assessments and insurance, paid to the testator's daughter Cora May Gastman during her life and at her death the land to at once vest in the heirs of her body and the trust cease and determine. By the third paragraph the testator devised certain land therein described by government descriptions to his daughter Cora in trust for his son, Charles, upon the same trusts and conditions as were imposed upon the devise in the second paragraph, the trust to be determined on the death of Charles and the fee to vest at once in the heirs of his body. A similar devise was made in the fourth paragraph to Cora of certain land described by government descriptions, to be held as trustee for the use and benefit of the testator's daughter Mary Sylvia Johnston (now Phelps.) The trustees were not required to give bond and were to receive no compensation. By the eighth paragraph of the will the testator devised and bequeathed "all the residue of my property, both real and personal," to the widow for life and at her death the same to go to his three children, share and share alike. Other provisions in paragraph 8 provided where the property disposed of in that clause should go in the event of any of the children

dying without children before the death of the widow. The will was duly probated and the estate administered.

The original bill filed by appellant alleges the testator undertook to divide his land into three parts of equal value and to devise one part to each of his children in trust for life; that the testator intended to devise to appellant, in trust for Mrs. Gastman, all the land described in paragraph 2, but that he did not own forty acres of the land described in said paragraph, and the devise was therefore forty acres less than the testator intended; that the testator intended by paragraph 3 to devise to Mrs. Gastman, as trustee for the appellant, all the lands described in said paragraph, but that the testator did not own forty acres therein described, and the devise was therefore for forty acres of land less than intended; that by the fourth paragraph the testator intended to devise in trust for the daughter Mary Sylvia all the land described in said paragraph for life and approximately five additional acres, the description of which was by oversight omitted in writing the will. It is claimed, therefore, that the testator omitted to devise eighty-five acres of land he owned and devised eighty acres of land he did not own; that the land he owned but which was not described in the will in any devise, descended to the three children as intestate estate and was owned by them as tenants in common. The bill further alleges that those parts of the second, third and fourth paragraphs devising land not owned by the testator are absolutely void; that the remaining portions of said paragraphs would, contrary to the intention of the testator, convey to his three children estates of great inequality; that by proper construction of the will the second, third and fourth paragraphs should be held for naught and that the lands owned by the testator at the time of his death vested in his three children under the eighth or residuary clause of the will and the same should be partitioned. Neither Charles nor Sylvia had any child or children. Cora had one child, named Florence.

Cora May Gastman, individually and as trustee, her daughter, Florence, and Mary Sylvia Phelps were made defendants to the bill. They answered the bill, admitting the testator did not own the tracts of land misdescribed in the will and averred he did own other tracts corresponding to those misdescribed, and that he intended to devise the tracts of land he actually owned. The answer averred the description in the second paragraph of the *west* half of lot 2 in the northwest quarter of section 6 should be construed as the *north* half of said lot, which the testator actually owned; that the description in said paragraph of the east half of lot 1 in the northeast quarter of *section 1* should be construed as devising the same property in *section 2,* which the testator owned; that the description in the third paragraph of the northwest quarter of the northeast quarter of *section 17* should be construed as devising the same property in *section 20,* which the testator owned. The answer further averred that upon the death of the testator each of his said children, with the consent of the others, took possession of the land described in the respective paragraphs of the will devised in trust to them, and that Charles Johnston and Mrs. Gastman also took possession, at the same time, of the land intended to be devised to them but which was misdescribed in the will, and that Mrs. Phelps took possession of the five acres forming part of the farm devised to her but which was not particularly described in the will; that said parties have enjoyed the use and income therefrom for thirteen years, and have thereby construed the second, third and fourth paragraphs of the will as devising the lands actually owned by the testator, and complainant should be estopped from claiming that any portion of the premises described in the bill did not pass by the second, third and fourth paragraphs of the will. Defendants also filed a cross-bill setting up substantially the same matters alleged in the answer and praying that the will be

construed as devising the land actually owned by testator. By leave of court Mrs. Phelps became a party complainant.

The cause was referred to the master in chancery to take the testimony and report conclusions. The master reported recommending a decree for partition as prayed in the original bill. The chancellor sustained exceptions of defendants to the master's report, and thereupon the original complainant amended his bill, alleging that shortly after the death of the testator his three children made a parol partition of his lands and that they are now estopped from denying the same, and praying that the parol partition be confirmed and each of said children be declared to severally own the land they are in possession of, freed from the trust provisions in the will. The court entered a decree dismissing the original bill for want of equity, construing the will as devising the land actually owned by the testator as prayed in the cross-bill.

It is admitted that as to three tracts of land the descriptions were in part false or erroneous. The testator owned the *north* half of lot 2 in the northwest quarter of section 6, but the description in the second paragraph of the will is the *west* half of said lot 2, which the testator did not own. The east half of lot 1 in the northeast quarter of *section 1,* described in paragraph 2, the testator did not own, but he owned a tract of the same description in *section 2.* The northwest quarter of the northeast quarter of *section 17,* described in paragraph 3, the testator did not own, but he owned a tract of the same description in *section 20.* The township and range were correctly stated in all the false descriptions. Approximately five acres of land composed of small fractions, which naturally belonged to the farm devised in the fourth paragraph, were not described therein. By the eighth paragraph of his will testator devised "all the residue of my property, both real and personal," etc. The question whether in such case the false part of the description may be stricken out and the will con-

strued as devising the lands actually owned by the testator received the consideration of this court in *Stevenson* v. *Stevenson,* 285 Ill. 486. In that case, as in this, the will described land the testator did not own and did not mention or describe land he did own, and it was held the will could not be corrected or construed as devising the land actually owned by testator. In that case there was nothing in any part of the will to indicate the testator intended to devise his own land, and it was held, if it be conceded, as a matter of fact, he intended to dispose of all his own land and only his own land at the time he executed the will, there was nothing in any language of the will itself to indicate such intention, and the will could not be construed to give effect to such supposed intention. The question raised received such thorough consideration in the *Stevenson case,* where many authorities are cited, that we deem it unnecessary to again review the decisions. The will here under discussion, unlike the will in the *Stevenson case,* did contain language to indicate that the testator intended to devise his own land. That language is the statement in paragraph 8 referred to, "all the residue of my property, both real and personal." The court said in the *Stevenson case* there was no residuary clause disposing of real estate or any other language to indicate the testator intended to dispose of his land, and only his land, by his will, and that in such case it was not permissible to read into the will "my property," or "my real estate," or equivalent words. Here the residuary clause shows the testator intended to devise all his own land. In the same clause the lands devised in trust for his children are referred to by the testator and provision made as to where the title should vest in the event of any child dying without leaving issue surviving.

The object in construing wills is to give effect to the testator's intention, and in determining the intention every part of the will must be considered in connection with every other part, and punctuation or paragraphing will ordinarily

not be permitted to control the meaning of the instrument. (*Kuehle* v. *Zimmer*, 249 Ill. 544; *Daniel* v. *Crusenbury,* 279 id. 367.) It seems clear from the language referred to, that the testator intended to dispose of, and thought he was disposing of, his own land by his will, and that intention is as clearly indicated as if the words "my property" had been put in the second, third and fourth paragraphs of the will. The language of the eighth clause will not permit the construction that the testator referred only to the residue of his land remaining after the specific devises of land he owned were given effect. In the *Stevenson case* the court said: "Were we permitted to use as part of the description the words 'my real estate' or their equivalent, of course the land could be definitely located and would pass to the devisee by the will. As the will does not anywhere in it contain words that definitely show that the testator intended to devise his land and only his land, we can not read into the description such words." The construction given this will by the decree is supported by the decision in the *Stevenson case.*

Appellant's contention that the taking possession of their respective farms by each of the three children and the enjoyment of the use and income therefrom since the death of their father effected a parol partition and the trusts created by the will ceased and determined cannot be sustained. They were not the only persons interested. There are contingent interests involved which cannot be determined until the happening of a certain event, and in such case the trusts could not be terminated by the consent or actions of the life tenants. (*Anderson* v. *Williams*, 262 Ill. 308; *Peterson* v. *Jackson,* 196 id. 40.) It is not claimed that either of the three children are deprived of the use and benefit of any land they were intended by their father to have. The real object sought to be accomplished by this litigation is a decree vesting the title in the testator's children in fee simple, freed from the conditions and trusts created by the

will. This ought not to be done if the will may legally be construed as the decree of the chancellor construed it.

We are of opinion the decree is supported by previous decisions of this court, and it is affirmed.

*Decree affirmed.*